UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

DEBRA O'KELLEY,

        Plaintiff,

v.                                Case No: 2:15-cv-521-FtM-CM

COMMISSIONER OF SOCIAL
SECURITY,"),

        Defendant.

_____

## ORDER

Plaintiff Debra O'Kelley seeks judicial review of the denial of her claim for Social Security disability insurance benefits ("DIB") by the Commissioner of the Social Security Administration ("Commissioner"). The Court has reviewed the record, the briefs and the applicable law. For the reasons discussed herein, the decision of the Commissioner is **AFFIRMED**.

## I.    Issues on Appeal[1]

Plaintiff raises three issues on appeal: (1) whether the finding of the Administrative Law Judge ("ALJ") at step four that Plaintiff can return to her past work is supported by substantial evidence; (2) whether substantial evidence supports the ALJ's finding at step two that Plaintiff does not have a severe mental impairment;

---

[1] Any issue not raised by Plaintiff on appeal is deemed to be waived. *Access Now, Inc. v. Southwest Airlines Co.*, 385 F.3d 1324, 1330 (11th Cir. 2004) ("[A] legal claim or argument that has not been briefed before the court is deemed abandoned and its merits will not be addressed."), *cited in Sanchez v. Comm'r of Soc. Sec.*, 507 F. App'x 855, 856 n.1 (11th Cir. 2013).

and (3) whether substantial evidence supports the ALJ's credibility determination.

## II.   Procedural History and Summary of the ALJ's Decision

On May 25, 2011, Plaintiff filed her application for DIB alleging disability beginning on December 21, 2010.   Tr. 76, 143-44.   The application initially was denied and upon reconsideration.   Tr. 75, 86, 90-92, 97-99.   Plaintiff requested and received a hearing before the ALJ on August 12, 2013, during which she was represented by an attorney.   Tr. 28-29, 103-04.   Plaintiff and Vocational Expert ("VE") Robert Lessne testified at the hearing.   Tr. 28-29.   The ALJ issued an unfavorable decision on December 10, 2013.   Tr. 15-23.

The ALJ found that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2015.   Tr. 17.   At step one, the ALJ concluded that Plaintiff has not engaged in substantial gainful activity since December 21, 2010, the alleged onset date.   *Id.*   At step two, the ALJ found that Plaintiff has the following severe impairments: hypertension, degenerative disc disease and osteoarthritis.   Tr. 17.   At step three, the ALJ concluded that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. §§ 404.1520(d), 404.1525 and 404.1526.   Tr. 19.   Taking into account the effect of Plaintiff's impairments, the ALJ determined that Plaintiff had the RFC to perform the full range of light work[2] as defined in 20 C.F.R. § 404.1567(b), specifically:

---

[2] Under the Social Security regulations, "[l]ight work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.   Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and

> [Plaintiff] is able to occasionally lift/carry 20 pounds, frequently lift/carry 10 pounds, stand/walk about 6 hours in an 8-hour workday, sit about 6 hours in an 8-hour workday, and has unlimited ability to push and pull including operation of hand and/or foot controls. [Plaintiff] can frequently climb ramps and stairs and balance. [Plaintiff] can occasionally climb ladders, ropes and scaffolds, stoop, kneel, crouch and crawl. Occasionally is defined as up to 1/3 of the time in an 8-hour workday.   Frequently is 1/3 to 2/3 of the time in an 8-hour workday.

Tr. 19.   Next, the ALJ found that Plaintiff is able to perform her past relevant work as waitress or cashier,[3] noting "[t]his work does not require the performance of work-related activities precluded by [Plaintiff's] residual functional capacity."   Tr. 22-23. Thus, the ALJ concluded that Plaintiff has not been disabled through the date of the decision.   Tr. 23.   On July 13, 2015, the Appeals Council denied Plaintiff's request for review.   Tr. 1-3, 8.   Accordingly, the ALJ's December 10, 2013 decision is the final decision of the Commissioner.   Plaintiff filed an appeal in this Court on August 31, 2015.   Doc. 1.   Both parties have consented to the jurisdiction of the United States Magistrate Judge, and this matter is now ripe for review.   Docs. 10.

## III.   Social Security Act Eligibility and Standard of Review

A claimant is entitled to disability benefits when she is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to either result in death or last for a

---

pulling of arm or leg controls.   To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.   If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time."   20 C.F.R. § 404.1567(b).

[3] As noted, Plaintiff disputes this finding, which contention will be addressed more fully herein.

continuous period of not less than twelve months.    42 U.S.C. 423(d)(1)(A); 20 C.F.R. § 404.1505(a).    The Commissioner has established a five-step sequential analysis for evaluating a claim of disability.    *See* 20 C.F.R. § 404.1520; 416.920.    The Eleventh Circuit has summarized the five steps as follows:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a residual functional capacity ("RFC") assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's RFC, age, education, and work experience.

*Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011).    The claimant bears the burden of persuasion through step four, and, at step five, the burden shifts to the Commissioner.    *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).    The Eleventh Circuit has noted that the Commissioner's burden at step five is temporary, because "[i]f the Commissioner presents evidence that other work exists in significant numbers in the national economy, 'to be considered disabled, the claimant must then prove that he is unable to perform the jobs that the Commissioner lists.'"    *Atha*, 616 F. App'x at 933 (citing *Doughty v. Apfel*, 245 F.3d 1274, 1278 n. 2 (11th Cir. 2001)).

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards and whether the findings are supported by substantial evidence.    *Crawford v. Comm'r of Soc. Sec.,* 363 F.3d 1155, 1158 (11th Cir. 2004).    The Commissioner's findings of fact are conclusive if supported by substantial evidence.    42 U.S.C. § 405(g).    Substantial evidence is "more than a

scintilla, *i.e.*, evidence that must do more than create a suspicion of the existence of the fact to be established, and such relevant evidence as a reasonable person would accept as adequate to support the conclusion." *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (internal citations omitted); *see also Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (finding that "[s]ubstantial evidence is something more than a mere scintilla, but less than a preponderance") (internal citation omitted). "The district court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the decision." *Foote*, 67 F.3d at 1560; *see also Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (stating that the court must scrutinize the entire record to determine the reasonableness of the factual findings).

The Eleventh Circuit recently has restated that "[i]n determining whether substantial evidence supports a decision, we give great deference to the ALJ's factfindings." *Hunter v. Soc. Sec. Admin., Comm'r*, 808 F.3d 818, 822 (11th Cir. 2015) (citing *Black Diamond Coal Min. Co. v. Dir., OWCP*, 95 F.3d 1079, 1082 (11th Cir. 1996)). Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the preponderance of the evidence is against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). "The district court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the decision." *Foote*, 67 F.3d at 1560; *see also Lowery*, 979 F.2d at 837 (stating that the court must scrutinize the entire

record to determine the reasonableness of the factual findings).   It is the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses.   *Lacina v. Commissioner*, 2015 WL 1453364, at *2 (11th Cir. 2015) (citing *Grant v. Richardson*, 445 F.2d 656 (5th Cir. 1971)).

## IV.   Discussion

### A.   *Whether the ALJ's finding at step four that Plaintiff can return to her past work is supported by substantial evidence*

Plaintiff first argues that the ALJ's step four finding that Plaintiff can return to her past work is not supported by substantial evidence because the ALJ made a contradictory finding concerning the VE's testimony, stating in one place in his opinion that the VE testified that Plaintiff could not return to her past relevant work after earlier stating in the opinion that she could.   Doc. 14 at 8-10.   Plaintiff asserts that because of this ambiguity, the Court should remand this case.   *Id.* at 10.   The Court has reviewed the ALJ's opinion and the relevant portion of the transcript with the VE, and finds Plaintiff's argument to be wholly without merit.   Instead, substantial evidence shows that there is a scrivener's error in the ALJ's opinion, which is harmless error.[4]

As noted, at step four of the sequential evaluation process, the ALJ determines whether Plaintiff has the RFC to perform the requirements of her past relevant work. 20 C.F.R. § 404.1520(f).   As discussed by the ALJ, the term "past relevant work" means work performed either as actually performed by the plaintiff or generally

---

[4] Indeed, as noted by the Commissioner, Plaintiff failed to make this argument to the Appeals Council below.   Doc. 15 at 18; Tr. 270-71.

performed in the national economy within the last 15 years or 15 years prior to the date that Plaintiff must establish disability.   20 C.F.R. § 404.1560; Tr. 16.   The ALJ may rely on vocational experts to determine whether a claimant can perform her past relevant work.   20 C.F.R. § 404.1560(b)(2) ("*Determining whether you can do your past relevant work.*   We will ask you for information about work you have done in the past. We may also ask other people who know about your work. . . . We may use the services of vocational experts or vocational specialists, or other resources, such as the 'Dictionary of Occupational Titles'").   It is the Plaintiff's burden at step four to demonstrate that she cannot return to her past relevant work.   *Lucas v. Sullivan*, 918 F.2d 1567, 1571 (11th Cir. 1990); 20 C.F.R. § 404.1520(1)(4)(iv).

Here, the VE testified that Plaintiff had past relevant work as a waitress and cashier.   Tr. 55-57.   After the ALJ posed hypothetical questions concerning an individual with Plaintiff's RFC, the ALJ asked the VE if such a hypothetical individual would be able to perform any of Plaintiff's past relevant work, and the VE responded that she could do "both the cashier and waitress" jobs.   Tr. 58.   The ALJ then asked if the VE's testimony was consistent with information contained in the *Dictionary of Occupational Titles*, and the VE responded that it was.   *Id.*   Thus, the ALJ concluded at Finding 6 of his opinion:

> **6. The claimant is capable of performing past relevant work. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).**

Tr. 22 (bold in original).   The ALJ went on to discuss the VE's testimony that Plaintiff has past relevant work as a waitress and cashier.   Tr. 23.   He then stated:

> Given, the hypothetical/residual functional capacity *the vocation[al] expert testified that the claimant would be unable to perform past relevant work.* The record supports that the claimant worked these jobs for sufficient duration and earnings level to meet the criteria of past relevant work. In comparing the claimant's residual functional capacity with the physical and mental demands of this work, the undersigned finds that the claimant is able to perform it as generally performed. The claimant's ability to perform light work allows her to perform work at an equal or lesser exertional level, and she does not have a severe mental impairment or other nonexertional limitations that preclude her from performing semi-skilled work.
>
> Pursuant to Social Security Ruling 00-4p, the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles.

Tr. 23 (emphasis added).

Plaintiff argues that because the ALJ stated that the VE testified that Plaintiff would be *unable* to perform her past relevant work, it is inconsistent with his earlier finding that Plaintiff can perform her past relevant work.   Doc. 14 at 8-9.   The Commission asserts, and the Court agrees, that the sentence highlighted above contained a scrivener's error, in that the word "unable" should have been "able." Doc. 15 at 17.   This reading is completely consistent with the remainder of the ALJ's opinion and the hearing testimony of the VE.   Moreover, the ALJ denied Plaintiff's application and did not move on to perform the step five analysis to determine if there is other work available in significant numbers in the national economy that Plaintiff can perform.   Tr. 23.   Regardless of the error, the decision of the ALJ would nonetheless be supported by substantial evidence and would not affect the outcome. Thus, the Court finds the error to be harmless.   As one court has noted:

> The Commissioner's decision is subject to harmless error review. *See, e.g., Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir.1983) (applying the

harmless error rule in a social security case); *see also* Fed.R.Civ.P. 61. The purpose of the harmless error rule is to avoid the waste of time and preserve judicial resources. *See Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir.1988). If an error did not effect a party's substantial rights, then the error is harmless and should be disregarded. *See id.*; *see generally McDonough Power Equip., Inc. v. Greenwood*, 464 U.S. 548, 553–54, 104 S.Ct. 845, 848–49 (1984). A scrivener's error is harmless when the ALJ's decision would be the same despite the error. *See Jones v. Astrue*, 821 F.Supp.2d 842, 848 (N.D.Tex.2011).

*Armstrong v. Colvin*, No. 6:11-CV-4172-VEH, 2013 WL 1180305, at *3 (N.D. Ala. Mar. 18, 2013).

> B.     Whether substantial evidence supports the ALJ's finding at step two that Plaintiff does not have a severe mental impairment

Next, Plaintiff argues that the ALJ erred by finding her mental impairment of affective disorder to be non-severe, asserting substantial evidence supports otherwise.   Doc. 14 at 10.   Defendant responds that substantial evidence supports the ALJ's finding; and even if the ALJ erred in this determination, such error would be harmless because he found Plaintiff had at least one severe impairment and considered all of Plaintiff's impairments as he continued through the sequential evaluation process.   Doc. 15 at 5, 10.   The Court, having reviewed the record, the applicable law and the decision of the ALJ, finds that substantial evidence supports the ALJ's determination of this issue.

As noted, at the second step in the sequential evaluation process, the ALJ determines whether the claimant has a severe impairment.   20 C.F.R. § 404.1520(a)(4)(ii).   Plaintiff bears the burden of establishing that her impairments are severe and prevent the performance of her past relevant work.   *Bowen*, 482 U.S. 146 at 146 n.5.   A severe impairment is an impairment or combination of

impairments that significantly limits a claimant's physical or mental ability to do basic work activities.   20 C.F.R. § 404.1520(c).   "An impairment is not severe only if the abnormality is so slight and its effect so minimal that it would clearly not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience."   *McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986).

The Social Security Regulations provide, in relevant part, that an "impairment or combination of impairments is not severe if it does not significantly limit your . . . . mental ability to do basic work activities."   20 C.F.R. § 404.1521(a).   Basic work activities mean "the abilities and aptitudes necessary to do most jobs."   *Id.* § 404.1521(b).   Examples of mental requirements set forth in the regulations include understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to supervision, co-workers and usual work situations; and dealing with changes in a routine work-setting.   *Id.* § 404.1521(b)(3)-(6).

In order to evaluate the severity of a mental impairment, the Commissioner's regulations require the application of a "special technique," which the ALJ applied in this case.   20 C.F.R. § 404.1520a; *see* Tr. 18-20.   Under the special technique, the ALJ will rate the degree of functional limitation in four broad functional areas: activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation.   20 C.F.R. § 404.1520a(c)(3).   The degree of limitation in the first three areas are rated on a five point scale of none, mild, moderate, marked, and extreme; and the fourth area is rated as none, one or two, three, four or more.

20 C.F.R § 404.1520a(c)(4). Once the degree of limitation in each area is determined, if the degree of limitation in the first three functional areas is none or mild and the fourth area is none, the ALJ generally will find, as he did here, the impairment is not severe, unless the evidence otherwise indicates more than a minimal limitation in ability to do basic work activities.   20 C.F.R. § 404.1520a(d)(1).   The ALJ's decision must incorporate findings and conclusions based on the special technique.   20 C.F.R. § 404.1520a(e)(4).

Here, the ALJ determined that the only severe impairments Plaintiff suffered from were physical limitations: hypertension, degenerative disc disease and osteoarthritis.  Tr. 17.   The ALJ specifically considered Plaintiff's alleged mental impairment of affective disorder and determined it did not cause more than minimal limitation in Plaintiff's ability to perform basic mental work activities.   Tr. 17-19. The ALJ applied the special technique and considered the four broad functional areas set out in the regulations for evaluating mental disorders.   *Id.*   The ALJ first found no limitations in Plaintiff's activities of daily living or social functioning.   As to the former area, the ALJ noted that Plaintiff showers and dresses daily without assistance; cooks and feeds herself simple meals, loads the dishwasher and makes the bed daily; does two loads of laundry per week; changes bed linens and does light cleaning; grocery shops three times monthly and drives three times per week.   Tr. 18.   In the area of social functioning, Plaintiff was noted during her consultative mental evaluation to be pleasant and cooperative, attends religious services monthly and travels out of town with her boyfriend.   *Id.*, Tr. 346.   The ALJ found mild

limitation in concentration, persistence or pace, noting that Plaintiff's mental status examination was overall within normal limits and only showed she had mild impairment in recent memory and concentration.   Tr. 19, 346.   He noted there were no episodes of decompensation of extended duration.   *Id.*   Based on these findings, the ALJ determined that Plaintiff's mental impairments were non-severe.   Tr. 19.

The ALJ correctly observed there is very little record evidence concerning Plaintiff's mental impairments.   Tr. 17.   She had never been under the care of a psychiatrist, in outpatient psychotherapy or inpatient in a behavioral health or mental health facility.   *Id.*   Accordingly, the ALJ noted that Plaintiff was referred to consultative psychologist Dr. Cheryl Kasprzak, Psy.D., for an evaluation.   Tr. 17-18, 344-47.

Dr. Kasprzak evaluated Plaintiff on August 15, 2011.   She reported that Plaintiff drove herself to the appointment; arrived on time; was clean and casually dressed; and was pleasant, willing and cooperative throughout the evaluation.   Tr. 344.   Plaintiff told Dr. Kasprzak that she had never been under the care of a psychiatrist or been in either outpatient psychotherapy or inpatient in a behavioral or mental health facility.   Tr. 345.   Plaintiff reported mood swings, insomnia, crying daily up to 10 minutes at a time, and fatigue.   *Id.*   She also stated she was forgetful concerning people's names, where she placed objects and her appointments.   *Id.*   Plaintiff rated her depression as 5 on a 10 point high scale, with 10 being the worst, and stated it fluctuates daily.   *Id.*   Plaintiff reported that a typical day for her was getting up between 7 and 10 a.m., showering and dressing without assistance,

cooking simple meals, and doing light household chores and laundry.   Tr. 346. Plaintiff said she grocery shops about three times per month and drives three times per week.   *Id.*   She also attends monthly religious services and travels with her boyfriend for overnight trips.   *Id.*   She also watches television for about 3 hours and reads 1 1/2 – 2 hours, both on a daily basis.   *Id.*

Dr. Kasprzak's mental status examination revealed that Plaintiff's mood and affect were within normal limits, she was alert and oriented x 3[5] and she was cooperative.   *Id.*   Her thought content and process, speech quality and content and psychomotor activity all were within normal limits.   *Id.*   Plaintiff's intellectual ability was below average.   *Id.*   Although Dr. Kasprzak found that Plaintiff's recent memory was not within normal limits as she was able to recall only 2 of 3 words after a distraction task, she found that Plaintiff's immediate memory was within normal limits and her remote memory was adequate.   *Id.*   Dr. Kasprzak further reported that Plaintiff's attention and concentration were fair, and Plaintiff denied current suicidal and homicidal ideation, plan or intent.   *Id.*   She diagnosed Plaintiff with depressive disorder, not otherwise specified, and rule out mood disorder secondary to chronic pain.   *Id.*   Dr. Kasprzak further stated that Plaintiff possesses the requisite skills and cognitive ability to manage her finances independently, yet she opined that Plaintiff's prognosis was "guarded" for gainful employment.   Tr. 347.

---

[5] Clinical shorthand for the findings in a physical examination of the patient by a healthcare worker, referring to a patient who is responsive to his or her environment (alert), and knows who he or she is, where he or she is, and the approximate time. http://medical-dictionary.thefreedictionary.com/alert+and+oriented+x+3.

As noted, the ALJ discussed Dr. Kasprzak's findings and found Plaintiff to be only partially credible, noting "the objective medical evidence does not support the alleged severity of alleged mental impairment." Tr. 18. He noted Plaintiff has described daily activities that are not as limited as one would expect with someone with her complained-of disabling symptoms and limitations. *Id.* The ALJ properly reasoned that Plaintiff's daily activities do not show any significant functional limitations imposed by mental health issues, and her mental impairment "poses no significant functional limitations on basic work related skills." *Id. See Cuthbert v. Astrue*, 303 F. App'x 697, 699 (11th Cir. 2008) (evidence showing claimant could carry out many daily living activities, such as preparing food, shopping, and caring for himself, supported the ALJ's finding that he did not have a severe mental impairment).

The ALJ also discussed that the psychiatric review technique ("PRT") opinions of State agency psychologists Dr. Yamir Laboy and Dr. Theodore Weber, completed in August and October 2011, respectively, were consistent with his finding as to the severity of Plaintiff's mental impairment. *Id.*, Tr. 71, 82. The ALJ noted both psychologists opined that, at most, Plaintiff has only mild limitations in each of the three categories of daily living, social functioning and maintaining concentration, persistence and pace; and neither doctor found Plaintiff to have experienced any episodes of decompensation. *Id.*, Tr. 71, 82. The ALJ gave these opinions great weight and concluded that "[b]ased on the totality of evidence, [Plaintiff] appears to be primarily limited by her physical difficulties and there is no indication of a severe

mental impairment at this time." *Id.* State agency psychological consultants are highly qualified and are experts in Social Security disability evaluation. *See* 20 C.F.R. § 404.1527(e)(2)(i). An ALJ must consider findings and opinions of State agency psychological consultants as opinion evidence. S*ee id.*; SSR 96-6p. More weight is given an opinion that is consistent with the record as a whole. *See* 20 C.F.R. § 404.1527(c)(4).

The Court finds that the ALJ's decision is supported by substantial evidence in the record. Plaintiff has submitted no evidence of severe mental limitations in her work activities because of her alleged mental impairments. *See* 20 C.F.R. § 404.1521(a) (an impairment not severe if it does not significantly limit your physical or mental ability to do basic work activities). Furthermore, no doctor has opined that Plaintiff's mental limitations are so debilitating as to preclude Plaintiff from working. Rather, the record shows the opposite to be true. *See Wind v. Barnhart*, 133 F. App'x 684, 690-91 (11th Cir. 2005) (finding that ALJ did not err in finding that plaintiff's obesity was not a severe impairment where there was no evidence it affected plaintiff's ability to perform work activities).

As noted, there is minimal record evidence concerning Plaintiff's mental limitations, and, as observed by the ALJ, Plaintiff did not allege restrictions on her daily activities or her concentration, persistence or pace related to mental impairments. Tr. 18-19. Furthermore, in August 2011 Plaintiff reported to one physician, Dr. Stanley Rabinowitz, that she had a history of depression on and off most of her life, yet had never sought treatment with a psychiatrist, but she was

taking Prozac and Melatonin, which controlled her symptoms.   Tr. 337, 339-40. During that same visit, Dr. Rabinowitz reported that Plaintiff was oriented x 3, her memory was intact, her appearance appropriate, she exhibited no behavioral difficulties and would appear to be able to handle her own funds.   Tr. 339.

Plaintiff argues that an October 2013 Mental Residual Functional Capacity form completed by Dr. Sebastian Draulans, M.D., supports her argument that she had a severe mental impairment.   Doc. 14 at 14; Tr. 414-17.   The ALJ discussed this opinion and accorded it little weight, finding that no objective medical evidence supports Dr. Draulans' findings – that Plaintiff has moderate limitation in social interaction, extreme limitation in sustained concentration and persistence, and extreme limitation in adaptation.   Tr. 22, 416-16.   Indeed, as the Commissioner points out, Dr. Draulans' October 2013 findings are unsupported by his own earlier treatment notes, in which he consistently found Plaintiff to exhibit a normal mood, affect and behavior.   Doc. 15 at 9-10; Tr. 365, 375, 390, 399, 403.   Further, on April 8, 2013, Plaintiff reported to Dr. Draulans that her general anxiety disorder was stable with her medications.   Tr. 375-76.

With no citation to authority, Plaintiff also argues it was error for the ALJ to discredit Plaintiff's mental impairments because she was unable to afford specialist care or additional medications.   Doc. 14 at 12.   The Court does not find Plaintiff's argument persuasive, because the record does not support her contentions with respect to her mental impairments.   First, as noted, Plaintiff had reported to her physicians that she suffered from depression on and off most of her life, including

when she was working, yet had never sought treatment with a psychiatrist.   Tr. 337, 339-40.   Second, the medical evidence shows she was successfully treated for her anxiety disorder with medications.   *See, e.g., id* and citations below.   As noted in a recent Eleventh Circuit opinion, citing to the court's published opinion in *Ellison v. Barnhart*, 355 F.3d 1272, 1275 (11th Cir. 2003):

> [w]hen evaluating a claimant's statements regarding his symptoms and their functional effects, the ALJ may consider whether the level or frequency of treatment is consistent with the level of complaints. *See* Social Security Regulation ("S.S.R.") 96–7p at 7. Nonetheless, the ALJ may not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue medical treatment without first considering any explanations that might explain the failure to seek or pursue treatment. *Id.* Thus, the ALJ must consider evidence showing that the claimant is unable to afford medical care before denying disability insurance benefits based upon the claimant's non-compliance with such care. *See Ellison,* 355 F.3d at 1275. Nonetheless, reversible error does not appear where the ALJ primarily based her decision on factors other than non-compliance, and where the claimant's non-compliance was not a significant basis for the ALJ's denial of disability insurance benefits. *See id.* at 1275-76.

*Beegle v. Soc. Sec. Admin., Comm'r*, 482 F. App'x 483, 487 (11th Cir. 2012).   In this case, as in *Beegle* and *Ellison*, the ALJ did not base his decision on non-compliance with Plaintiff's treatment but on the medical evidence of record, which did not support the severity of Plaintiff's alleged mental limitations.   *See* discussion, *supra*. In addition, Plaintiff's citations to medical records to support this argument (and other citations in the record) concern Plaintiff's ability to afford pain management treatment for her *physical* ailments, not treatment for her *mental* impairments; and in most of these visits, her physicians reported that Plaintiff's depression and anxiety disorder was controlled with the medications she was taking.   *See, e.g.,* Tr. 313 (visit

dated January 4, 2011 noting that Prozac was helping Plaintiff); Tr. 310 (visit dated May 17, 2011 stating patient cannot afford pain management for her lower back pain); Tr. 394-95 (visit dated April 5, 2012 in which Dr. Draulans noted Plaintiff was "self pay" for fibromyalgia medication and she was "[n]egative for dysphoric mood"); Tr. 375-76 (visit dated April 8, 2013 in which Dr. Draulans noted Plaintiff's general anxiety disorder was stable and she should continue with her current medication regimen).

Additionally, as noted by the Commissioner, the ALJ found in Plaintiff's favor at step two of the sequential evaluation process by finding that she had multiple severe impairments.   Doc. 15 at 10; Tr. 17.   The ALJ then proceeded with the other steps of the sequential evaluation process.   As the Eleventh Circuit has stated, "[n]othing requires that the ALJ must identify, at step two, all of the impairments that should be considered severe." *Heatly v. Comm'r of Soc. Sec.*, 382 F. App'x 823, 825 (11th Cir. 2010).   Thus, the ALJ's findings were not in error.

C.   <i>Whether substantial evidence supports the ALJ's credibility<br>determination</i>

Plaintiff lastly argues that the ALJ erred in discrediting Plaintiff's credibility in his finding that Plaintiff was not getting the treatment expected of a "totally disabled individual," because it is unclear what legal standard the ALJ applied.   Doc. 14 at 15; Tr. 21.   She further argues the ALJ substituted his opinion for that of the medical experts.   Doc. 14 at 16.   The Commissioner notes that although Plaintiff challenges the ALJ's credibility analysis, she does not challenge the ALJ's specific credibility findings, instead challenging the "nebulous and undefined standard" the

ALJ applied.   Doc. 15 at 11-12.   Nonetheless, the Commissioner asserts, and the Court agrees, that substantial evidence supports the ALJ's credibility determination, and the ALJ applied the proper legal standards.   *Id.* at 11.

When assessing the credibility of subjective complaints, an ALJ considers: (1) evidence of an underlying medical condition; and (2) objective medical evidence either (a) confirming the severity of alleged symptoms, or (b) indicating that the medical condition could be reasonably expected to cause symptoms as severe as alleged.   *See* 20 C.F.R. §§ 404.1529, 416.929; *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002); *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991).

The Eleventh Circuit has long recognized that "credibility determinations are the province of the ALJ." *Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th Cir. 2005), citing *Wilson v. Heckler*, 734 F.2d 513, 517 (11th Cir. 1984).   If the objective medical evidence does not confirm the severity of the alleged symptoms but indicates that the claimant's impairments could reasonably be expected to produce some degree of pain and other symptoms, the ALJ must evaluate the intensity and persistence of the claimant's alleged symptoms and their effect on his ability to work.   *See* 20 C.F.R. §§ 404.1529(c)(1); *Wilson*, 284 F.3d at 1225-26; *Foote*, 67 F.3d at 1561.   The ALJ compares the claimant's statements with the objective medical evidence, the claimant's daily activities, treatment and medications received, and other factors concerning limitations and restrictions the symptoms cause.   *See* 20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1).   "If the ALJ discredits subjective testimony, he must articulate explicit and adequate reasons for doing so. Failure to articulate the reasons

for discrediting subjective testimony requires, as a matter of law, that the testimony be accepted as true." *Wilson*, 284 F.3d at 1225 (internal citations omitted).

Here, based on the requirements of 20 C.F.R. § 404.1529, the ALJ considered Plaintiff's symptoms and the extent to which the symptoms can reasonably be accepted as consistent with the objective medical and other evidence.   Tr. 20. Properly discussing the standard, Plaintiff's testimony and the medical evidence, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Plaintiff]s statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision."   Tr. 20.   After discussing Plaintiff's treatment history, opinion evidence and her daily activities (Tr. 20-22), the ALJ noted he was persuaded that Plaintiff's treatment history provided a reasonable basis for some of the symptoms she alleged and that her impairments would impose "some restrictions" in her ability to perform work related activities.   Tr. 22.   He found, however, that "the totality of her statements regarding her limitations are inconsistent with the objective evidence that does not demonstrate the existence of limitations of such severity as to preclude the claimant from performing any work on a regular and continuing basis. It is for these reasons the claimant is found not fully credible."   *Id.* at 22, citing 20 C.F.R. § 404.l529(c)(3) and SSR 96-7p.   Clearly, the ALJ applied the proper legal standards.

Plaintiff also argues that the ALJ substituted his lay opinion for that of the medical experts in characterizing an MRI of her lumbar spine as showing "primarily

mild findings."   Doc. 14 at 16; Tr. 21.   Where medical evidence supports a plaintiff's subjective complaints of pain, an ALJ cannot disregard that medical evidence and substitute his own opinion for that of medical experts. *See Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir.1992).   If a plaintiff "testifies as to [her] subjective complaints of disabling pain and other symptoms. . . the ALJ must clearly 'articulate explicit and adequate reasons' for discrediting the claimant's allegations of completely disabling symptoms." *Dyer*, 395 F.3d at 1210 (quoting *Foote*, 67 F.3d at 1561–62.

Here, the Court finds that the ALJ did not substitute his opinion for that of the medical experts, and he explicitly articulated his reasons for discrediting Plaintiff's subjective complaints of completely disabling symptoms.   Instead, he properly summarized the medical evidence of record.   For example, as to the MRI to which Plaintiff is referring taken on June 17, 2010, Dr. Jeffrey Henn compared the image to an MRI from August 2008, and noted that the 2010 image "looks similar to [Plaintiff's] previous films."   Tr. 283.   The impressions from the radiologist reading the MRI were (1) mild degenerative disc disease at the lower lumbar spine; (2) moderate sized right focal paracental disc protrusion at L5-S1 with canal narrowing and impingement of the right S1 nerve root, and (3) diffuse disc bulge and end place spurring complexes at L4-L5 associated with facet join arthropathy and hypertrophy contributing to moderate canal narrowing.   Tr. 285.   The ALJ accurately summarized both the findings of the radiologist and Dr. Henn.   Tr. 21.   The ALJ further accurately noted that although surgery was suggested but not an emergency,

Plaintiff informed Dr. Henn that she was getting along fairly well since her injection. Tr. 282.   Based on the medical records, the Court is not persuaded that the ALJ mischaracterized the evidence or substituted his lay opinion for those of the medical experts.

## V.     Conclusion

Upon review of the record, the undersigned concludes that the ALJ applied the proper legal standards, and his determination that Plaintiff is not disabled is supported by substantial evidence.

ACCORDINGLY, it is hereby

**ORDERED:**

1.     The decision of the Commissioner is **AFFIRMED**.

2.     The Clerk of Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g) in favor of the Commissioner, and close the file.

**DONE** and **ORDERED** in Fort Myers, Florida on this 13th day of September, 2016.

CAROL MIRANDO
United States Magistrate Judge

Copies:
Counsel of record